1  Annick M. Persinger (CA Bar No. 272996)
   *apersinger@tzlegal.com*
2  **TYCKO & ZAVAREEI LLP**
   1970 Broadway, Suite 1070
3  Oakland, California 94612
   Telephone: (510) 254-6808
4  Facsimile: (202) 973-0950

5  Hassan A. Zavareei (CA Bar No. 181547)
   *hzavareei@tzlegal.com*
6  Allison W. Parr (*pro hac vice* forthcoming)
   aparr@tzlegal.com
7  **TYCKO & ZAVAREEI LLP**
   2000 Pennsylvania Avenue, Northwest, Suite 1010
8  Washington, District of Columbia 20006
   Telephone: (202) 973-0900
9  Facsimile: (202) 973-0950

10 *Attorneys for Plaintiffs*

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

14 SHERENE BUCKLES and OMAR            Case No. 5:23-cv-4052
   MONTES, *on behalf of themselves and all*
   *others similarly situated,*          **CLASS ACTION COMPLAINT**
15
                  Plaintiff,            (JURY TRIAL DEMANDED)
16
         v.
17
   CAPITAL ONE FINANCIAL
18 CORPORATION and CAPITAL ONE,
   NATIONAL ASSOCIATION
19
                  Defendant.
20

21

22

23

24

25

26

27

28

                    **CLASS ACTION COMPLAINT**

Plaintiffs Sherene Buckles and Omar Montes bring this action on behalf of themselves and all others similarly situated against Defendants Capital One Financial Corporation and Capital One, National Association (collectively, "Capital One" or "Defendants"). Plaintiffs make the following allegations based on the investigation of their counsel, and based upon information and belief, except as to those allegations specifically pertaining to themselves, which are based on their personal knowledge.

## NATURE OF ACTION

1.      Capital One lured Plaintiffs and similarly situated Class Members into applying for Quicksilver credit cards and SavorOne Rewards credit cards (together, the "Credit Cards") by promising a cash sign-up bonus. The promised cash sign-up bonus was a substantial factor in Plaintiffs' and Class Members' decision to apply for the Credit Cards. Immediately after Plaintiffs and Class Members applied for the Credit Cards online, Capital One indicated that they had been "approved" for the Credit Cards. But, even though Plaintiffs and Class Members then spent the required amount using their Credit Cards within the specified time period, Capital One never provided Plaintiffs and Class Members with the promised sign-up bonus. Capital One's practice of failing to provide the promised sign-up bonus is unlawful in multiple respects.

2.      First, Capital One breached the covenant of good faith and fair dealing with consumers who have the Credit Cards by failing to issue sign-up bonuses that are advertised and promised at the time consumers apply for the Credit Cards. By failing to provide the promised sign-up bonus, Capital One denied consumers of the benefit of their bargain.

3.      Second, Capital One's practice of advertising and not paying sign-up bonuses violates California's Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200 *et seq*. Capital One's promise of a sign-up bonus enticed Plaintiffs and Class Members to apply for the Credit Cards and to spend a certain amount within a specified time by advertising terms that included a sign-up bonus—the bait.

4.      But, after Plaintiffs and Class Members had applied, Capital One approved Plaintiffs and Class Members for Credit Cards on different terms that did not include eligibility for a sign-up bonus—the switch. Although Capital One had switched the terms, Capital One never

1  informed Plaintiffs and similarly situated Class Members that they were no longer eligible for the

2  sign-up bonus.

3        5.     As a result, Capital One's initial promise of a sign-up bonus incentivized Plaintiffs

4  and Class Members not only to apply for and open the Credit Cards, but also to spend money on

5  the Credit Cards to receive a sign-up bonus. In other words, based on Capital One's deceptive offer

6  of a sign-up bonus, Plaintiffs and Class Members applied for and charged purchases to the Credit

7  Cards that they otherwise would not have charged had they not been drawn in by the advertised

8  sign-up bonus.

9        6.     Plaintiffs, on behalf of themselves and the Class (defined below), seek to end

10  Defendants' deceptive practices and sue for damages, restitution, and injunctive relief, as set forth

11  below.

12  **JURISDICTION AND VENUE**

13        7.     **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction pursuant

14  to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of

15  costs and interest, exceeds the sum of $5 million in the aggregate. In total, there are well over 100

16  members of the proposed Class that are known to exist. Complete diversity exists between at least

17  one plaintiff and one defendant.

18        8.     **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants

19  because Defendants conduct substantial business in this District and in the State of California

20  through its offering and servicing of credit products to consumers in California through its website,

21  by phone, and by mail. In addition, Plaintiffs and the Class have suffered injury as a result of

22  Defendants' acts in this District.

23        9.     **Venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because

24  a substantial part of the events or omissions giving rise to this action occurred in this District.

25  **PARTIES**

26        10.    Plaintiff Sherene Buckles is and was at all relevant times a citizen of the State of

27  California, residing in Pacific Grove, California. Ms. Buckles applied and was approved for her

28  Quicksilver credit card on Capital One's website in February 2023.

3

**CLASS ACTION COMPLAINT**

11.     Plaintiff Omar Montes is and was at all relevant times a citizen of the State of California, residing El Sobrante, California. Mr. Montes applied and was approved for Quicksilver credit card on Capital One's website in December 2022.

12.     Plaintiffs seek relief in their individual capacities and on behalf of Class of all others similarly situated.

13.     Defendant Capital One Financial Corporation is a corporation organized and existing under the laws of the State of Delaware with its headquarters and principal place of business in McLean, Virginia.

14.     Defendant Capital One, National Association is a national bank with its headquarters and principal place of business in McLean, Virginia, and is wholly owned by Capital One Financial Corporation.

## FACTS COMMON TO ALL CLAIMS

**Capital One's Deceptive Advertising of Sign-Up Bonuses**

15.     Capital One consistently misrepresented to Plaintiffs and similarly situated Class Members that they would be paid a sign-up bonus if they applied for the Credit Cards and then spent a specified amount in a certain time frame.

16.     Specifically, at the outset of the transaction, Capital One promised Plaintiffs and Class Members a sign-up bonus, ranging from $150 to $500, when they applied for the Credit Cards at credit level "excellent" or through a targeted offer. As shown below, the promised sign-up bonus is featured prominently on the Credit Cards' offer pages[1]:

---

[1] Quicksilver from Capital One, https://www.capitalone.com/credit-cards/quicksilver/ (last visited Aug. 6, 2023); SavorOne Rewards from Capital One, https://www.capitalone.com/credit-cards/savorone-dining-rewards/ (last visited Aug. 6, 2023).

**CLASS ACTION COMPLAINT**

**Quicksilver from Capital One**

Earn unlimited 1.5% cash back on every purchase, every day. Plus, a $200 Cash Bonus.

See new cardmember offer details below.

See if I'm Pre-Approved

Apply Now

Credit Level: EXCELLENT
★★★★★ Read all 6,302 reviews

View important rates and disclosures

| Unlimited Rewards | New Cardmember Offer | Low Intro APR | Annual Fee |
|---|---|---|---|
| Earn unlimited 1.5% cash back on every purchase, every day. | Earn a one-time $200 cash bonus once you spend $1,000 on purchases within 3 months from account opening [1] | 0% intro APR for 15 months on purchases and balance transfers; 19.99% - 29.99% variable APR after that; 3% fee on the amounts transferred within the first 15 months | $0 |



**SavorOne Rewards from Capital One**

Earn unlimited 3% cash back on dining, entertainment, popular streaming services & at grocery stores [1]

See If I'm Pre-Approved

Apply Now

Credit Level: EXCELLENT
★★★★★ Read all 1,747 reviews

View important rates and disclosures

| Unlimited Rewards | New Cardmember Offer | Low Intro APR | Annual Fee |
|---|---|---|---|
| Earn unlimited 3% cash back on dining, entertainment, popular streaming services and at grocery stores, plus 1% on all other purchases. [1] | Earn a one-time $200 cash bonus once you spend $1,000 on purchases within the first 3 months from account opening [2] | 0% intro APR for 15 months on purchases and balance transfers; 19.99% - 29.99% variable APR after that; 3% fee on the amounts transferred within the first 15 months | $0 |

17.    Additionally, consumers who apply through targeted offers received by mail, email, or viewed on social media, or who choose to apply to the Credit Cards at credit level "excellent" are shown "Important Disclosures" on the actual application pages for the Credit Cards.[2] The

---

[2] Quicksilver Application, https://tinyurl.com/2hmf8z7y (last visited Aug. 6, 2023);
SavorOne Rewards Application, https://tinyurl.com/ntha9fw4 (last visited Aug. 6, 2023).

**CLASS ACTION COMPLAINT**

Important Disclosures link to Capital One Application Terms, which explicitly state that sign-up bonuses will be paid if cardholders meet minimum spend requirements.[3]

18.    Based on Capital One's promised sign-up bonus, Plaintiffs and Class Members clicked the "See if I'm Pre-Approved" and/or "Apply Now" buttons. By applying for the SavorOne Rewards and Quicksilver credit cards, applicants risk a temporary decrease in their credit scores when Capital One conducts a "hard inquiry" and examines applicants' credit files.

19.    On the webpage Plaintiffs and Class Members are directed to after applying for the Credit Cards, and in the welcome emails, Capital One then indicated to Plaintiffs and Class Members that they had been approved for a "SavorOne Rewards" or "Quicksilver" Credit Card. But while Capital One indicated to Plaintiff and the Class Members that they had been approved, Capital One had, in fact, deceptively switched the applicable terms to those associated with "good" instead of "excellent" credit.   While Capital One sets forth a different APR upon approval (increasing it from the 0% APR for the first fifteen months, associated with excellent credit), Capital One never mentioned to Plaintiffs and Class Members that were no longer eligible for the sign-up bonus. As such, Plaintiffs and Class Members, reasonably believed they had been approved for the Credit Cards with the associated sign-up bonus.  Plaintiffs and Class Members then spent the amount required for the sign-up bonus in the specified time reasonably believing that they would still receive a sign-up bonus. Capital One's misrepresentation that Plaintiffs and Class Members would receive a sign-up bonus were a substantial factor in Plaintiffs' and Class Members' decision to apply for the Credit Cards, and to meet the spending amount in the specified time frame.

20.    As a result of Capital One's deceptive and bad faith practice of luring customers in with the promise of a sign-up bonus and then switching the terms applicable in the process of approving Plaintiffs and Class Members and omitting that the sign-up bonus no longer applied, Plaintiffs and Class Members thus suffered economic harm—the difference between the full

[3] *See* Quicksilver Application Terms, https://tinyurl.com/2hmf8z7y (follow "Download/Print" hyperlink) (last visited Aug. 6, 2023), attached as Exhibit 1; *see also* SavorOne Rewards Application Terms https://tinyurl.com/ntha9fw4 (follow "Download/Print" hyperlink) (last visited Aug. 6, 2023), attached as Exhibit 2.

1  required spending amount paid with no sign-up bonus, and the required spending amount paid less

2  the sign-up bonus that was promised out the outset.

3  **Consumer Complaints**

4      21.    Dozens of consumers have submitted complaints to the Consumer Financial

5  Protection Bureau ("CFPB") about Capital One's deceptive marketing of the Credit Cards.

6      22.    Consumers have complained to the CFPB about Capital One's deceptive practices,

7  reporting that even when they notify Capital One that they have not received the promised sign-

8  up bonus after meeting the minimum spend requirements on their Credit Cards, Capital One was

9  unwilling to apply the terms under which these consumers applied for their Credit Cards.

10      a.   "I applied for a Capital One Savor One card, on Capitol One 's website, when I was

11          offered a promotion to receive {$150.00} signup bonus for spending {$500.00} in

12          three months and 0 % APR for 15 months (starting at sign up, XX/XX/19) on all

13          new purchases. I have spent the required {$500.00} and they are refusing to honor

14          the promotion. They say I didn't sign up under the promotion. I have asked them

15          how their system says I signed up and they can't or won't give any specifics. I was

16          careful to follow all the instructions for the promotion given on their web page. I

17          asked if I somehow didn't qualify and they verified that the problem was not

18          qualification, but that their computer said I didn't sign up for that promotion. They

19          have also charged me interest on at least one billing cycle."[4]

20      b.   "Applied for the CapitalOne XXXX card using their link on their site that was

21          supposed to give {$200.00} cashback for spending {$500.00} within 3 months of

22          getting the card. I spent the {$500.00} on the card after receiving it in the mail and

23          I still didn't get the {$200.00} sign up bonus after 2 months, so I called CapitalOne

24          and their representative says the offer wasn't applied to my application, even though

25          I used their link on their official site that displayed the offer ( https :

26          //www.capitalone.com/credit-cards/savorone-dining-rewards/ ). This is blatant

27

28  [4] Complaint No. 3525163, CFPB, https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3525163 (Feb. 8, 2020).

**CLASS ACTION COMPLAINT**

false advertising and a very slimy business strategy to get people to sign up for their cards and ultimately not honor the advertised offer."[5]

c. "I opened a Capital One Quicksilver credit card, and I did not receive the promotional terms. The promotional terms were supposed to be 0 % APR for 15 months and a {$200.00} sign-up bonus. I received neither of these items when I signed up for the card. I tried to resolve this through the company, and they were not helpful."[6]

23. Consumers in online forums have also complained about Capital One's deceptive tactics:

a. "Be careful when applying for these cards (or at least the SavorOne) that you don't get bait-and-switched. I applied for the SavorOne for excellent credit with the $200 bonus offer. I was approved for the card, but it was apparently for a version without the bonus offer. I didn't find this out until after the fact, and the approval screen contained no obvious sign that a bait-and-switch had occurred."[7]

b. "I order a Quick Silver credit card from Capital One that offered a $200 sign up bonus after I spent $500 in 3 months. I met their requirement and never received the $200. I called them 5 times and received incorrect information after wasting about 45 minutes per call. I finally talked to a supervisor (so she said) and I was told that I didn't qualify for the $200 and she couldn't tell me why. I was never notified before I received the card that I didn't qualify. Do not fall for Capital One's bait and switch program and go with a reputable company's credit card."[8]

c. "Bait and Switch Advertising. I saw an ad and applied for the Capital One Quicksilver Card from a link. The offer was for a $200 rebate after I charged the

---

[5] Complaint No. 4950492, CFPB, https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/4950492 (Nov. 26, 2021).
[6] Complaint No. 6592124, CFPB, https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/6592124 (Feb. 20, 2023).
[7] Comment No. 1585878, https://www.doctorofcredit.com/capital-one-savor-and-savorone-card-review-500-signup-bonus-and-4-dining-entertainment-category/ (Mar. 27, 2023).
[8] Comment by Alan, *Capital One Reviews*, CONSUMERAFFAIRS, https://www.consumeraffairs.com/credit_cards/capital_one.htm?page=3 (Jan. 8, 2023).

**CLASS ACTION COMPLAINT**

first $500. Capital One tells me I 'applied for the wrong card', even though there was only one link from the advertisement. I am closing the account. I believe businesses should live up to their advertisements."[9]

d.   "I have been working on my credit and was offered a Quicksilver card and promised 200 after I spent 500 in 3 months. After several calls I was finally told that I did not qualify for this but was clearly told that if I qualify for the card I would get this $200 credit. I canceled immediately and paid my balance."[10]

e.   "Be wary of the $150 cash bonus offer on Quicksilver. I signed up with the offer (and have the physical letter to prove it) but CapOne refused to honor it."[11]

24.   Capital One's practices are consistent, dating back at least as early as 2019 and continuing to the present day.

## NAMED PLAINTIFFS' CLAIMS

### *Plaintiff Buckles*

25.   Plaintiff Sherene Buckles maintains a credit card account for a Capital One Quicksilver credit card.

26.   Ms. Buckles signed up for the account on Capital One's website in February 2023 after receiving an offer in the mail.

27.   In applying for the Quicksilver card and signing up for the account, Ms. Buckles relied upon representations made by Capital One, both on its website and in its mailed offer, that she would receive a sign-up bonus of $200 if she spent $500 in the first three billing cycles.

28.   Based on the promise of a sign-up bonus, Ms. Buckles applied for the Quicksilver card offering with the sign-up bonus, was directed to a screen informing her that she had been approved for the Quicksilver card, and received a welcome email indicating the same.

---

[9] Comment from James, *Capital One Reviews*, CONSUMERAFFAIRS, https://www.consumeraffairs.com/credit_cards/capital_one.htm?page=3 (Sept. 21, 2022).
[10] Comment from Randy, *Capital One Reviews*, CONSUMERAFFAIRS, https://www.consumeraffairs.com/credit_cards/capital_one.htm?page=3 (Aug. 28, 2021).
[11] Debating to get capital one quicksilver, REDDIT, https://www.reddit.com/r/CreditCards/comments/74qjon/debating_to_get_capital_one_quicksilver/ (last visited Aug. 10, 2023).

**CLASS ACTION COMPLAINT**

29.     The targeted offer that Ms. Buckles received and applied for had the same terms and conditions as the "excellent credit" option, although Ms. Buckles did not see the words "excellent credit" on the application landing page.

30.     Although Capital One indicated that she had been approved, the Terms and Conditions that apply to Ms. Buckles' Quicksilver card, which are available to her in her online Capital One account, disclose that her APR is not 0% for the first fifteen months, but omit any information about the sign-up bonus. Ms. Buckles thus had no reason to believe that she had been approved on terms that made her ineligible for the sign-up bonus.

31.     Ms. Buckles spent $500 in the first three billing cycles because she reasonably believed that she would receive a $200 cash sign-up bonus. To date, Ms. Buckles has not received the sign-up bonus Capital One advertised.

32.     Capital One's offer of a sign-up bonus was a substantial factor in causing Ms. Buckles to apply for the Quicksilver card. Capital One's misleading offer was also a substantial factor in causing Ms. Buckles to spend $500 on her Quicksilver card in the first three billing cycles. If Ms. Buckles had known that she would not receive a sign-up bonus with the Quicksilver card, she would not have applied for the Quicksilver card and would not have spent $500 on her Quicksilver card.

### *Plaintiff Montes*

33.     Plaintiff Omar Montes maintains a credit card account for a Capital One Quicksilver credit card.

34.     Mr. Montes signed up for the account on Capital One's website in December 2022 after receiving a targeted offer on Instagram.

35.     In applying for the Quicksilver card and signing up for the account, Mr. Montes relied upon representations made by Capital One, both on its website and in its Instagram advertisement, that he would receive a sign-up bonus of $200 if he spent $500 in the first three billing cycles.

36.     Based on the promise of a sign-up bonus, Mr. Montes applied for the Quicksilver card offering with the sign-up bonus and was directed to a screen informing him that he had been

1    approved for the Quicksilver card.

2        37.    The targeted offer that Mr. Montes received and applied for was offered the same

3    terms and conditions as the "excellent credit" option, although Mr. Montes did not see the words

4    "excellent credit" on the application landing page.

5        38.    Although Capital One indicated that he had been approved, the Terms and

6    Conditions that apply to Mr. Montes' Quicksilver card, which are available to him in his online

7    Capital One account, disclose that his APR is not 0% for the first fifteen months after opening his

8    account, but omit any information about the sign-up bonus. Mr. Montes thus had no reason to

9    believe that he had been approved on terms that made him ineligible for the sign-up bonus.

10       39.    Mr. Montes spent $500 in the first three billing cycles because he reasonably

11   believed that he would receive a $200 cash sign-up bonus. To date, Mr. Montes has not received

12   the sign-up bonus Capital One advertised.

13       40.    Capital One's offer of a sign-up bonus was a substantial factor in causing Mr.

14   Montes to apply for the Quicksilver card. Capital One's misleading offer was also a substantial

15   factor in causing Mr. Montes to spend $500 on his Quicksilver card in the first three billing cycles.

16   If Mr. Montes had known that he would not receive a sign-up bonus with the Quicksilver card, he

17   would have not have applied for the Quicksilver card and would not have spent $500 on his

18   Quicksilver card.

19                                   **CLASS ACTION ALLEGATIONS**

20       41.    Plaintiffs incorporate and reallege the above paragraphs.

21       42.    Plaintiffs bring this action on behalf of themselves and the members of the proposed

22   Class, which consists of:

23           All Capital One accountholders who reside in California and who, from the
             beginning of the applicable statutory period through present, signed up for a
24           Quicksilver or SavorOne Rewards credit card that offered a sign-up bonus but did
             not receive the sign-up bonus despite timely meeting any spending requirement.
25
26       43.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Class

     before the Court determines whether certification is appropriate.
27
         44.    Excluded from the Class are Capital One, its parents, subsidiaries, affiliates,
28

                                              11
                                **CLASS ACTION COMPLAINT**

officers and directors, any entity in which Capital One has a controlling interest, and any legal representative, heir, or assign of Capital One. Also excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over the action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

45.    The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only through Capital One's records.

46.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.

47.    Among the questions of law and fact common to the Class are:

    a.  Whether Capital One's offer of sign-up bonuses is likely to mislead consumers;

    b.  Whether Capital One's offer of sign-up bonuses for the Credit Cards were and are false and misleading;

    c.  Whether the facts Capital One failed and continued to fail to disclose in its advertising were and are material;

    d.  Whether reliance on Capital One's misrepresentations and omissions is presumed;

    e.  Whether Capital One's acts alleged herein were unlawful;

    f.  Whether consumers suffered and continue to suffer damage as a result of Capital One's acts alleged herein;

    g.  The extent of the damages suffered by consumers as a result of Capital One's acts alleged herein;

    h.  Whether Capital One's acts alleged herein were and are unfair;

    i.  Whether Capital One breached the implied duty of good faith and fair dealing with members of the Class by engaging in the conduct alleged herein;

    j.  Whether Capital One should be enjoined from continuing to advertise as alleged herein.

48.    Plaintiffs' claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful Capital One policies and practices. Plaintiffs have suffered the

harm alleged and have no interests antagonistic to the interests of any other member of the Class.

49.    Plaintiffs are representatives who willy fully and adequately assert and protect the interests of the Class and have retained counsel who are experienced in prosecuting class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.

51.    While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Capital One's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

52.    Capital One has acted or refused to act on grounds that apply generally to the Class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the Class as a whole.

53.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Capital One. For example, one court might enjoin Capital One from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive to the interests of the Class, although certain members of the Class are not parties to such actions.

**FIRST CAUSE OF ACTION**
**Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing**
**(By Plaintiffs and on Behalf of the Class)**

54.    Plaintiffs repeat and reallege each and every fact, matter, and allegation set forth above and incorporate them at this point by reference as though set forth in full.

55.    Plaintiffs and members of the Class and Defendants have contracted for financial services, as embodied in the Capital One Application Terms made available to applicants for the

**CLASS ACTION COMPLAINT**

Credit Cards.

56.     The Capital One Application Terms include the representations Defendants made regarding issuing a sign-up bonus when Plaintiffs and fellow members of the Class signed up for the Credit Cards.

57.     Defendants did not issue the sign-up bonus to Plaintiffs and members of the Class.

58.     Therefore, Defendants breached the terms of the Application Terms that form the contract with Plaintiffs and fellow members of the Class.

59.     Additionally, under the laws of California, Virginia, and the states in which Defendants do business and has personal accountholders, good faith is an element of every contract. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

60.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

61.     Defendants have breached the covenant of good faith and fair dealing in the Application Terms by failing to issue the sign-up bonus to Plaintiffs and members of the Class.

62.     Instead of exercising that discretion in good faith and consistent with Plaintiffs' reasonable expectations, Defendants abuses any discretion afforded to it by the Application Terms by not issuing the sign-up bonus.

63.     By exercising their discretion to enrich themselves by gouging their customers, Defendants consciously and deliberately frustrate the agreed common purpose of the contract and

disappoints the reasonable expectations of Plaintiffs and members of the Class, thereby depriving them of the benefit of their bargain.

64.    Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

65.    Plaintiffs and members of the Class have sustained damages as a result of Defendants' breach of contract and breach of the covenant of good faith and fair dealing.

**SECOND CAUSE OF ACTION**
**Violations of California Business and Professions Code section 17500**
**(By Plaintiffs and on Behalf of the Class)**

66.    Plaintiffs repeat and reallege each and every fact, matter, and allegation set forth above and incorporate them at this point by reference as though set forth in full.

67.    Defendants' acts alleged herein violate California Business and Professions Code section 17500. Defendants acted knowingly, recklessly, and in conscious disregard of the true facts in perpetuating its deceptive advertising scheme and causing injuries to Plaintiffs and the Class.

68.    Plaintiffs and the Class have been misled and unfairly induced to apply for and meet a minimum spend requirement on the Credit Cards. As a result of Defendants' false and misleading sign-up bonus and practices, misrepresentations, and omissions, Plaintiffs and members of the Class applied for the Credit Cards and spent the required amount to obtain the sign-up bonus and thus have been harmed in the amount of the difference between the full required spending amount paid with no sign-up bonus, and the required spending amount paid less the sign-up bonus that was promised at the outset.

**THIRD CAUSE OF ACTION**
**Violations of California Business and Professions Code section 17200**
**(By Plaintiffs and on Behalf of the Class)**

69.    Plaintiffs repeat and reallege each and every fact, matter, and allegation set forth above and incorporate them at this point by reference as though set forth in full.

70.    Defendants have engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200. Specifically, Defendants' acts alleged herein are unfair and likely to deceive the general public.

71.    As a result of Defendants' false and misleading sign-up bonus and practices,

misrepresentations, and omissions, Plaintiffs and members of the Class applied for the Credit Cards and spent the required amount to obtain the sign-up bonus and thus have been harmed in the amount of the difference between the full required spending amount paid with no sign-up bonus, and the required spending amount paid less the sign-up bonus that was promised at the outset.

72.     If Defendants are permitted to continue to engage in the unlawful, unfair, and fraudulent advertising for the Credit Cards described above, their conduct will engender further injury, expanding the number of injured members of the public beyond its already large size, and will tend to render any judgment at law, by itself, ineffectual. Under such circumstances, Plaintiffs and the Class have no adequate remedy at law that Defendants will continue to engage in the wrongful conduct alleged herein, thus engendering a multiplicity of judicial proceedings. Plaintiffs and the Class request and are entitled to injunctive relief, enjoining Defendant from continuing to engage in the unfair, unlawful, and fraudulent advertising described herein.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (By Plaintiffs and on Behalf of the Class)

73.     Plaintiffs repeat and reallege each and every fact, matter, and allegation set forth above and incorporate them at this point by reference as though set forth in full.

74.     This claim is pled in the alternative to the first cause of action.

75.     Plaintiffs and members of the Class conferred a monetary benefit on Defendants by signing up for and then using their Credit Cards to purchase services or goods.

76.     Defendants had knowledge of this benefit when they accepted money from Plaintiffs and members of the Class.

77.     Plaintiffs and members of the Class used their Credit Cards to make purchases of services or goods with the expectation of receiving sign-up bonuses. Defendants receive a financial benefit from each dollar charged on a Credit Card.

78.     Defendants failed to provide the sign-up bonus, and as a result, Plaintiffs and members of the Class overpaid Defendants as a part of the services they purchased.

79.     Defendants affirmatively misrepresented to Plaintiffs and members of the Class that they would receive sign-up bonuses.

80.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiffs and members of the Class because Defendants failed to provide the sign-up bonus that they paid for but did not receive. Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and members of the Class.

81.    Defendants' enrichment at the expense of Plaintiffs and the members of the Class is and was unjust.

82.    As a result of Defendants' wrongful conduct, as alleged above, Plaintiffs and members of the Class are entitled under the unjust enrichment laws of California to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants, plus attorneys' fees, costs, and interest thereon.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

A.    Certifying the Class as requested herein;

B.    Requiring Defendants to restore all monies that Defendants acquired from Plaintiffs and the Class as a result of its false advertising and unfair, unlawful, and fraudulent business acts and practices;

C.    Interest on all such sums restored at the maximum legal rate;

D.    Enjoining Defendants from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this complaint and any other acts and practices proven at trial;

E.    Awarding Plaintiffs and the proposed Class members damages;

F.    In the alternative to damages, awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed members of the Class;

G.    Awarding attorneys' fees and costs; and

H.    Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable.

**CLASS ACTION COMPLAINT**

Date: August 10, 2023

By: _/s/ Annick M. Persinger_
Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Hassan A. Zavareei (CA Bar No. 181547)
*hzavareei@tzlegal.com*
Allison W. Parr (*pro hac vice* forthcoming)
aparr@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Attorneys for Plaintiffs*

**CLASS ACTION COMPLAINT**

# EXHIBIT 1

**Capital One**

**CAPITAL ONE® APPLICATION TERMS**

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases and Transfers** | **0%** introductory APR for the first 15 months that your account is open.<br><br>After that, your APR will be **19.99%**, **25.99%** or **29.99%**, based on your creditworthiness.<br>This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | **29.99%**.<br><br>This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances and transfers on the transaction date. |
| **For Credit Card Tips from the Consumer Financial Protection Bureau** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at **http://www.consumerfinance.gov/learnmore**. |
| **Fees** | |
| **Annual Fee** | **None.** |
| **Transaction Fees**<br><br>• Transfer | **3%** of the amount of each transferred balance that posts to your account during the first 15 months that your account is open or at a promotional APR that we may offer you at any other time.<br><br>**None** for transferred balances at the Purchase APR after the first 15 months that your account has been open. |
| • Cash Advance | Either **$3** or **3%** of the amount of each cash advance, whichever is greater. |
| **Penalty Fees**<br><br>• Late Payment | Up to **$40**. |

996D996

**How Do You Calculate My Balance?** We use a method called "average daily balance (including new transactions)." See "How Do You Calculate The Interest Charge?" section below.

**What Are My Billing Rights?** Information on your rights to dispute transactions and how to exercise those rights is provided in the "Your Billing Rights" section in the enclosed Additional Disclosures.

**Are There Any Other Penalty Fees Associated With This Card That Are Not Listed In The Box Above?** No. There are no additional Penalty Fees associated with this card.

**What Should I Put For Total Annual Income?** You may include personal income, which is income you have earned, including full-time, part-time, or seasonal jobs, self-employment, interest or dividends, retirement, and public assistance. You may also include shared income, which is money from somebody else that is regularly deposited into your individual account or into a joint account that person shares with you. If you are 21 or over, you may also include somebody else's income that is regularly used to pay your expenses.

**What Will My Transfer Fee Be If I Transfer A Balance?** Any transferred balance that posts to your account at an introductory or promotional APR that we may offer you will incur a 3% Transfer Fee. If you make a Transfer at the Purchase APR, that transfer will not incur a Transfer Fee.

**Can You Change My APRs?** While a late payment won't cause your APR to increase, in the future, we may increase your APRs if market conditions change. If we increase your APRs for any reason other than an increase in the Prime Rate, the new APRs will apply only to new transactions you make after we notify you of the change in writing.

**Can You Change My Account Terms?** We can change the terms of your account as permitted by law. When required, we will send you notice before doing so.

**How Do You Calculate My Variable Rates?** Your variable rates may change when the Prime Rate changes. We calculate variable rates by adding a percentage to the Prime Rate published in *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. Variable rates on the following segment(s) will be updated quarterly and will take effect on the first day of your January, April, July and October billing periods: Non-Introductory Purchase APR: Prime plus 11.74%, 17.74% or 21.74%; Non-Introductory Transfer APR: Prime plus 11.74%, 17.74% or 21.74%; Cash Advance APR: Prime plus 21.74%. Any increase in the Prime Rate may increase your Interest Charges and your Minimum Payment.

**How Do You Determine My Credit Line?** We will determine your credit line after a review of your application and your ability to pay.

**What Are The Daily Periodic Rates Used To Calculate My Interest?** The daily periodic rate for your Introductory Purchase APR is 0.00000%, Non-Introductory Purchase APR is 0.05477%, 0.07121% or 0.08216%, Introductory Transfer APR is 0.00000%, Non-Introductory Transfer APR is 0.05477%, 0.07121% or 0.08216%, and Cash Advance APR is 0.08216%. See "How Do You Calculate The Interest Charge?" section in the enclosed Additional Disclosures.

**How Do You Calculate My Minimum Payment?** If your balance is less than $25, your minimum payment will be equal to your balance. Otherwise, your minimum payment will be the greater of $25 or 1% of your balance plus new interest and late payment fees. We will also add any past due amount to your minimum payment. If your Account charges off, the entire balance is due immediately.

Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated.

## THINGS YOU SHOULD KNOW ABOUT THIS REWARDS PROGRAM

**How do I earn rewards?** You will earn 5% cash back on hotels and rental cars booked through Capital One Travel using this Rewards card account, and 1.5% cash back on all other purchases. Earnings will apply to net purchases (purchases minus any credits or returns) only. Cash advances, balance transfers, and checks used to access your account are not considered purchases and will not earn rewards. All purchases made outside of Capital One Travel such as hotel incidentals, upgrades or other expenses, will not earn the enhanced earn rate, but will receive the standard 1.5% cash back earn rate.

**How does my spend bonus work?** You will earn a $200 bonus if you spend at least $1000 within 3 months of your rewards membership enrollment date. Once you qualify for this bonus, we will apply it to your rewards balance within two billing cycles. Existing or previous cardmembers are not eligible for this product if they have received a new cardmember bonus for this product in the past 48 months.

**Will my rewards ever expire?** Your rewards are yours for the life of the account—they will not expire. But if your account is closed, you will lose any rewards you have not redeemed.

**Is there a limit to the amount of rewards I can earn?** There is no cap to the amount of rewards you can earn on purchases.

**How do I redeem my rewards?** You can get your cash back upon request in the form of a statement credit or a check. You can also set up an automatic redemption preference; options include: (1) at a set time each calendar year or (2) when a specific threshold has been reached. Just go online to capitalone.com.
You can also redeem for credits for previous purchases, gift cards, and more. Rates for these redemption options may vary and are subject to change without notice.

**What happens if I do not set up an automatic redemption preference?** Until you set up an automatic redemption preference, you will receive your cash back upon your request.

**How often can I change my automatic redemption preference?** You may change your automatic redemption preference at any time, but you cannot request an annual redemption to be fulfilled in the same month you make a change. If you have an automatic redemption preference, you may also make upon-request redemptions without interfering with your pre-established automatic redemption preference.

**How do I redeem my rewards for new travel reservations?** Go online to travel.capitalone.com to book your flight, car rental or hotel and use your cash back rewards to pay for your travel. If your transaction includes taxes, surcharges, and fees, these expenses will be included in the overall calculation to determine how much cash back rewards are required for redemption. Separately itemized travel transactions on your statement cannot be combined for a single redemption. Please note that Capital One has no control over how merchants itemize and charge related transactions.

**Is my account eligible to transfer rewards?** Your account may be eligible to transfer rewards. Please be aware that transfers are only permitted between certain Capital One rewards accounts. Not all rewards products are eligible for transfer.

**Full terms and details of the rewards program will be available in your Welcome Package upon approval.**

## ADDITIONAL DISCLOSURES & TERMS AND CONDITIONS

I understand that I am not eligible for this offer if:
- My application is received after this offer expires, is incomplete, unreadable, inaccurate or cannot be verified.
- My address is not in one of the following locations: the 50 United States, Washington, D.C., Puerto Rico or a U.S. military location.
- My address is a correctional institution.
- My monthly income (my disclosed total annual income divided by 12) doesn't exceed my monthly rent/mortgage payment by at least $425. Or, Capital One otherwise determines that I am unable to make my monthly payments.
- I am under 18 or do not have a valid Social Security Number or Individual Taxpayer Identification Number.
- I have applied for a Capital One credit card 2 or more times in the last 30 days.
- I have received a new cardmember bonus for this product in the past 48 months.
- I have a past due Capital One credit card account.
- I am over my credit line on a Capital One credit card.
- I have had a Capital One credit card that charged off within the past year.
- I have a non-discharged bankruptcy (one that is still unresolved).
- I have implemented a credit security freeze or credit lock with one or more of the credit bureaus, which prevents Capital One from accessing my credit report.

With respect to this account, I understand that:
- I am not obligated to accept the card or pay any fee or charge unless I use this card.
- Even if I am otherwise eligible for this offer, approval is based upon satisfying Capital One's credit standards.
- Capital One may contact me to obtain or confirm application information.
- I am providing my application information to Capital One, N.A. and its affiliates.
- I am authorizing Capital One to check my consumer report information and my Demand Deposit Account data, such as checking account information, and to verify my employment, income, and/or other application information with third parties.
- I am authorizing Capital One to use consumer report information that it collects for analysis and to otherwise improve the products and services it offers.
- I am authorizing Capital One to verify education-related information in my application and am authorizing my school to release enrollment information for that purpose.
- If I am approved, I am requesting that Capital One send me a physical credit card in the mail and make a virtual card number available to me when I log into the Capital One mobile app or website.
- If I am approved, Capital One may contact me regarding my Card and Account as described in my Capital One Customer Agreement. For example, when I give Capital One my mobile telephone number, I agree to receive messages from Capital One and their authorized agents, including prerecorded and text messages. I also consent to receive calls through an automatic telephone dialer (autodialer).
- I will receive the Capital One Customer Agreement. I am bound by its terms and all future revisions.
- This offer is nontransferable.
- I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information.
- An applicant, if married, may apply for a separate account.
- Everything I have stated in this application is correct.
- This card is intended primarily for consumer use.

## THINGS YOU SHOULD KNOW ABOUT THIS CARD

**When Can I Request A Transfer?** You may request a transfer 10 days after your account is opened. Your account may not always be eligible for Transfers. Transfer eligibility is determined by Capital One at our discretion. Transfers between Capital One accounts are not permitted. That means balances cannot be transferred to this account from any other credit card issued by Capital One including, but not limited to cards branded with, Bass Pro Shops CLUB, Cabela's, Kohl's, Sony, GM, BuyPower Card, Union Plus, Walmart and Teamster Privilege.

**How Do You Apply My Payment?** We will apply payments up to your minimum payment first to the balance with the lowest APR (including 0% APR), and then to balances with higher APRs. We apply any part of your payment exceeding your minimum payment to the balance with the highest APR, and then to balances with lower APRs.

**How Can I Avoid Paying Interest Charges?** If you pay your statement's "New Balance" in full by the due date each month, we will not charge interest on any new transactions that post to the purchase balance. If you have been paying your account in full without interest charges, but fail to pay your next "New Balance" in full, we will charge interest on the unpaid balance. For cash advances and transfers, we will start charging interest on the transaction date. From time to time, we may give you offers that allow you to pay less than the total balance and avoid interest charges to new transactions that post to your purchase balance. If we do, we will provide details in the specific offer.

**How Is The Interest Charge Determined?** Interest charges accrue from the 1) date of the transaction, 2) date the transaction is processed or 3) first day of the billing period. Interest accrues daily on every unpaid amount until it is paid in full. Any interest that has accrued during a billing period will post to your Account at the end of the billing period and will appear on your next Statement. This means you may owe Interest Charges even if you pay the entire "New Balance" one month, but did not do so the previous month. For example, even if a customer pays their balance in full on a February 26th due date, interest would continue to accrue on the balance from February 2nd (the start of the Billing Cycle) through February 26th, and will appear on their next Statement. Once you start accruing Interest Charges, you generally must pay your New Balance in full for two consecutive Billing Cycles before Interest Charges stop being posted to your Statement.  Interest Charges are added to the proper segment of your account. However, we reserve the right to not assess Interest Charges.

**How Do You Calculate The Interest Charge?**  We use a method called Average Daily Balance (including new transactions). Under this method, we first calculate your daily balance; for each segment, 1) take the beginning balance and add in new transactions and the periodic interest charge on the previous day's balance, then 2) subtract any payments and credits for that segment as of that day. The result is the daily balance for each segment. However, if you paid your previous month's balance in full (or if your balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances. Also, transactions subject to a grace period are not added to the daily balances.

Next, to find your Average Daily Balance: 1) add the daily balances together for each segment, and 2) divide the sum by the number of days in the billing cycle.

At the end of each billing cycle, we determine your Interest Charge as follows: 1) multiply your Average Daily Balance by the daily periodic rate (APR divided by 365) for that segment, and 2) multiply the result by the number of days in the billing  period. NOTE: Due to rounding or a minimum interest charge, this calculation  may vary from the interest charge actually assessed.

**Are Unauthorized Use Or $0 Fraud Liability Claims Subject To Investigation And Verification?** Yes.

## IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. **What this means for you:** When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## *MILITARY LENDING ACT NOTICE*

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

To hear this same disclosure and a general description of your payment obligations for this credit card account, please call us toll-free at: 844-788-8999.

During any period in which the Military Lending Act ("the Act") applies to you, no provision of your Cardholder Agreement that is inconsistent with the Act shall apply and your Cardholder Agreement shall be interpreted to comply with the Act.

## *REGIONAL DISCLOSURE INFORMATION*

**Ohio Residents:** Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

**New York and Vermont Residents:** Capital One may obtain your credit reports, for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request, you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Department of Financial Services by telephone or visit its website for free information on comparative credit card rates, fees and grace periods. New York State Department of Financial Services: 1-877-226-5697 or http://www.dfs.ny.gov.

**Wisconsin Residents:** No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless, prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision. If the credit card for which you are applying is granted, you will notify the Bank if you have a spouse who needs to receive notification that credit has been extended to you.

**Puerto Rico Residents:** Puerto Rico Residents may request a copy of these disclosures in Spanish.

**Residentes de Puerto Rico:** Pueden solicitar una copia de este documento en Español.

### **YOUR BILLING RIGHTS: KEEP THIS DOCUMENT FOR FUTURE USE**

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

**What To Do If You Find A Mistake On Your Statement:** If you think there is an error on your statement, write to us at:

Capital One, P. O. Box 30279, Salt Lake City, UT 84130-0279

In your letter, give us the following information:
- <u>Account information:</u> Your name and account number.
- <u>Dollar amount:</u> The dollar amount of the suspected error.
- <u>Description of problem:</u> If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors **in writing**. You may call us or notify us electronically, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

### **What Will Happen After We Receive Your Letter.**

**When we receive your letter, we must do two things:**
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of our receipt of your letter, we will send you a written notice explaining either that we corrected the error (to appear on your next statement) or the reasons we believe the bill is correct.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question until we send you a notice about the outcome of our investigation, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**
- <u>If we made a mistake:</u> You will not have to pay the amount in question or any interest or other fees related to that amount.
- <u>If we do not believe there was a mistake:</u> You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us at Capital One, P.O. Box 30279, Salt Lake City, UT 84130-0279 within **10 days** telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

### **Your Rights If You Are Dissatisfied With Your Credit Card Purchases.**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, all of the following must be true:
1. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify; and
2. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us **in writing** at:

Capital One, P. O. Box 30279, Salt Lake City, UT 84130-0279

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

©2023 Capital One. Capital One is a federally registered service mark. Products and services offered by Capital One, N.A. Capital One supports information privacy protection: see our Web site at www.capitalone.com.

# EXHIBIT 2

**Capital One**

**CAPITAL ONE® APPLICATION TERMS**

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases and Transfers** | **0%** introductory APR for the first 15 months that your account is open. <br><br> After that, your APR will be **19.99%**, **25.99%** or **29.99%**, based on your creditworthiness. <br> This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | **29.99%**. <br><br> This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances and transfers on the transaction date. |
| **For Credit Card Tips from the Consumer Financial Protection Bureau** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at **http://www.consumerfinance.gov/learnmore**. |
| Fees | |
| **Annual Fee** | **None.** |
| **Transaction Fees** <br><br> •Transfer <br><br><br><br><br><br> •Cash Advance | <br><br> **3%** of the amount of each transferred balance that posts to your account during the first 15 months that your account is open or at a promotional APR that we may offer you at any other time. <br><br> **None** for transferred balances at the Purchase APR after the first 15 months that your account has been open. <br><br> Either **$3** or **3%** of the amount of each cash advance, whichever is greater. |
| **Penalty Fees** <br><br> •Late Payment | <br><br> Up to **$40**. |

996D996

**How Do You Calculate My Balance?** We use a method called "average daily balance (including new transactions)." See "How Do You Calculate The Interest Charge?" section below.

**What Are My Billing Rights?** Information on your rights to dispute transactions and how to exercise those rights is provided in the "Your Billing Rights" section in the enclosed Additional Disclosures.

**Are There Any Other Penalty Fees Associated With This Card That Are Not Listed In The Box Above?** No. There are no additional Penalty Fees associated with this card.

**What Should I Put For Total Annual Income?** You may include personal income, which is income you have earned, including full-time, part-time, or seasonal jobs, self-employment, interest or dividends, retirement, and public assistance. You may also include shared income, which is money from somebody else that is regularly deposited into your individual account or into a joint account that person shares with you. If you are 21 or over, you may also include somebody else's income that is regularly used to pay your expenses.

**What Will My Transfer Fee Be If I Transfer A Balance?** Any transferred balance that posts to your account at an introductory or promotional APR that we may offer you will incur a 3% Transfer Fee. If you make a Transfer at the Purchase APR, that transfer will not incur a Transfer Fee.

**Can You Change My APRs?** While a late payment won't cause your APR to increase, in the future, we may increase your APRs if market conditions change. If we increase your APRs for any reason other than an increase in the Prime Rate, the new APRs will apply only to new transactions you make after we notify you of the change in writing.

**Can You Change My Account Terms?** We can change the terms of your account as permitted by law. When required, we will send you notice before doing so.

**How Do You Calculate My Variable Rates?** Your variable rates may change when the Prime Rate changes. We calculate variable rates by adding a percentage to the Prime Rate published in *The Wall Street Journal* on the 25th day of December, March, June and September. If the *Journal* is not published on that day, then see the immediately preceding edition. Variable rates on the following segment(s) will be updated quarterly and will take effect on the first day of your January, April, July and October billing periods: Non-Introductory Purchase APR: Prime plus 11.74%, 17.74% or 21.74%; Non-Introductory Transfer APR: Prime plus 11.74%, 17.74% or 21.74%; Cash Advance APR: Prime plus 21.74%. Any increase in the Prime Rate may increase your Interest Charges and your Minimum Payment.

**How Do You Determine My Credit Line?** We will determine your credit line after a review of your application and your ability to pay.

**What Are The Daily Periodic Rates Used To Calculate My Interest?** The daily periodic rate for your Introductory Purchase APR is 0.00000%, Non-Introductory Purchase APR is 0.05477%, 0.07121% or 0.08216%, Introductory Transfer APR is 0.00000%, Non-Introductory Transfer APR is 0.05477%, 0.07121% or 0.08216%, and Cash Advance APR is 0.08216%. See "How Do You Calculate The Interest Charge?" section in the enclosed Additional Disclosures.

**How Do You Calculate My Minimum Payment?** If your balance is less than $25, your minimum payment will be equal to your balance. Otherwise, your minimum payment will be the greater of $25 or 1% of your balance plus new interest and late payment fees. We will also add any past due amount to your minimum payment. If your Account charges off, the entire balance is due immediately.

Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated.

### THINGS YOU SHOULD KNOW ABOUT THIS REWARDS PROGRAM

**How do I earn rewards?** You will earn 8% cash back on purchases made through the Capital One Entertainment ticketing platform using this Rewards card account, 5% cash back on hotels and rental cars booked through Capital One Travel using this Rewards card account, 3% cash back on dining, qualified entertainment purchases, popular streaming services, purchases made at grocery stores and 1% cash back on all other purchases. Entertainment purchases made through a third party site or by a vendor that does not categorize themselves under one of the qualifying entertainment merchandise category codes will earn 1% cash back. Grocery purchases made at gas stations, convenience stores, warehouse clubs, discount stores, and super stores (or at grocery stores associated with discount stores or super stores) will earn 1% cash back. Earnings will apply to net purchases (purchases minus any credits or returns). Cash advances, balance transfers, and checks used to access your account are not considered purchases and will not earn rewards. Capital One uses merchant category codes to determine if a purchase is within one of the additional cash back categories. This means that sometimes a purchase may not earn additional cash back. For example, some food trucks or food carts may use a merchandise code and restaurants in department stores or hotels may use a merchandise or hotel code instead of a dining code. Additionally some amusement parks may code their online tickets as merchandise instead of entertainment. Capital One is not responsible for merchant category codes used by merchants. All purchases made outside of Capital One Travel such as hotel incidentals, upgrades or other expenses, will not earn the enhanced earn rate, but will receive the standard 1% cash back earn rate.

**What is a qualified entertainment purchase?** For the purposes of this product, it is defined as a ticket purchase made at a movie theatre, record store, video rental location (excluding digital streaming and subscription services), tourist attraction, amusement park, aquarium, zoo, dance hall, billiard and pool establishment, bowling alley, commercial sports promoter (professional or semi-professional live sporting events), theatrical promoter, or concert promoter.

**What are non-qualifying entertainment purchases?** You won't earn 3% cash back for purchases made at golf courses, country clubs (including membership fees), collegiate sporting events categorized as "universities", charitable organizations that provide live entertainment, amusement park tickets purchased on third-party sites or on entertainment and resort packages categorized as "travel" or "hotel".

**What is a qualified streaming purchase?** Streaming includes purchases made from eligible music and video streaming services. Some services, such as Prime Video, AT&T TV and Verizon FIOS On Demand, are excluded, as well as audiobook subscription services and fitness programming.

**How does my spend bonus work?** You will earn a $200 bonus if you spend at least $1,000 within 3 months of your rewards membership enrollment date. Once you qualify for this bonus, we will apply it to your rewards balance within two billing cycles. Existing or previous cardmembers are not eligible for this product if they have received a new cardmember bonus for this product in the past 48 months.

**How do I earn elevated cash back on purchases through Uber during the promotional period?** You will earn 10% cash back on eligible purchases made using the Uber and Uber Eats apps (and dedicated website) with this rewards card account. Purchases that post outside of the offer period, Uber gift cards, and Uber One membership fees are not qualifying purchases and are not eligible for enhanced rewards; however, these purchases will earn the base rewards earn rate previously disclosed under the terms and conditions of your rewards program. This offer is valid for consumer, non-commercial use only. Offer valid for eligible purchases made in the U.S. (U.S. territories may be excluded) between 12:00 a.m. ET, November 15, 2022, through 11:59 p.m. ET, November 14, 2024. Additional terms and Uber terms and conditions apply.

**Will my rewards ever expire?** Your rewards are yours for the life of the account—they will not expire. But if your account is closed, you will lose any rewards you have not redeemed.

**Is there a limit to the amount of rewards I can earn?** There is no cap to the amount of rewards you can earn on purchases.

**How do I redeem my rewards?** You can get your cash back upon request in the form of a statement credit or a check. You can also set up an automatic redemption preference; options include: (1) at a set time each calendar year or (2) when a specific threshold has been reached. Just go online to capitalone.com.
You can also redeem for credits for previous purchases, gift cards, and more. Rates for these redemption options may vary and are subject to change without notice.

**What happens if I do not set up an automatic redemption preference?** Until you set up an automatic redemption preference, you will receive your cash back upon your request.

**How often can I change my automatic redemption preference?** You may change your automatic redemption preference at any time, but you cannot request an annual redemption to be fulfilled in the same month you make a change. If you have an automatic redemption preference, you may also make upon-request redemptions without interfering with your pre-established automatic redemption preference.

**How do I redeem my rewards for new travel reservations?** Go online to travel.capitalone.com to book your flight, car rental or hotel and use your cash back rewards to pay for your travel. If your travel transaction includes taxes, surcharges, and fees, these expenses will be included in the overall calculation to determine how much cash back rewards are required for redemption. Separately itemized travel transactions on your statement cannot be combined for a single redemption. Please note that Capital One has no control over how merchants itemize and charge related transactions.

**Is my account eligible to transfer rewards?** Your account may be eligible to transfer rewards. Please be aware that transfers are only permitted between certain Capital One rewards accounts. Not all rewards products are eligible for transfer.

**Full terms and details of the rewards program will be available in your Welcome Package upon approval.**

## ADDITIONAL DISCLOSURES & TERMS AND CONDITIONS

I understand that I am not eligible for this offer if:
- My application is received after this offer expires, is incomplete, unreadable, inaccurate or cannot be verified.
- My address is not in one of the following locations: the 50 United States, Washington, D.C., Puerto Rico or a U.S. military location.
- My address is a correctional institution.
- My monthly income (my disclosed total annual income divided by 12) doesn't exceed my monthly rent/mortgage payment by at least $425. Or, Capital One otherwise determines that I am unable to make my monthly payments.
- I am under 18 or do not have a valid Social Security Number or Individual Taxpayer Identification Number.
- I have applied for a Capital One credit card 2 or more times in the last 30 days.
- I have received a new cardmember bonus for this product in the past 48 months.
- I have a past due Capital One credit card account.
- I am over my credit line on a Capital One credit card.
- I have had a Capital One credit card that charged off within the past year.
- I have a non-discharged bankruptcy (one that is still unresolved).
- I have implemented a credit security freeze or credit lock with one or more of the credit bureaus, which prevents Capital One from accessing my credit report.

With respect to this account, I understand that:
- I am not obligated to accept the card or pay any fee or charge unless I use this card.
- Even if I am otherwise eligible for this offer, approval is based upon satisfying Capital One's credit standards.
- Capital One may contact me to obtain or confirm application information.
- I am providing my application information to Capital One, N.A. and its affiliates.

- I am authorizing Capital One to check my consumer report information and my Demand Deposit Account data, such as checking account information, and to verify my employment, income, and/or other application information with third parties.
- I am authorizing Capital One to use consumer report information that it collects for analysis and to otherwise improve the products and services it offers.
- I am authorizing Capital One to verify education-related information in my application and am authorizing my school to release enrollment information for that purpose.
- If I am approved, I am requesting that Capital One send me a physical credit card in the mail and make a virtual card number available to me when I log into the Capital One mobile app or website.
- If I am approved, Capital One may contact me regarding my Card and Account as described in my Capital One Customer Agreement. For example, when I give Capital One my mobile telephone number, I agree to receive messages from Capital One and their authorized agents, including prerecorded and text messages. I also consent to receive calls through an automatic telephone dialer (autodialer).
- I will receive the Capital One Customer Agreement. I am bound by its terms and all future revisions.
- This offer is nontransferable.
- I understand that, unless the offer discloses a specific credit line, the exact amount of my credit line will be determined by Capital One after review of my application and other information.
- An applicant, if married, may apply for a separate account.
- Everything I have stated in this application is correct.
- This card is intended primarily for consumer use.

## THINGS YOU SHOULD KNOW ABOUT THIS CARD

**When Can I Request A Transfer?** You may request a transfer 10 days after your account is opened. Your account may not always be eligible for Transfers. Transfer eligibility is determined by Capital One at our discretion. Transfers between Capital One accounts are not permitted. That means balances cannot be transferred to this account from any other credit card issued by Capital One including, but not limited to cards branded with, Bass Pro Shops CLUB, Cabela's, Kohl's, Sony, GM, BuyPower Card, Union Plus, Walmart and Teamster Privilege.

**How Do You Apply My Payment?** We will apply payments up to your minimum payment first to the balance with the lowest APR (including 0% APR), and then to balances with higher APRs. We apply any part of your payment exceeding your minimum payment to the balance with the highest APR, and then to balances with lower APRs.

**How Can I Avoid Paying Interest Charges?** If you pay your statement's "New Balance" in full by the due date each month, we will not charge interest on any new transactions that post to the purchase balance. If you have been paying your account in full without interest charges, but fail to pay your next "New Balance" in full, we will charge interest on the unpaid balance. For cash advances and transfers, we will start charging interest on the transaction date. From time to time, we may give you offers that allow you to pay less than the total balance and avoid interest charges to new transactions that post to your purchase balance. If we do, we will provide details in the specific offer.

**How Is The Interest Charge Determined?** Interest charges accrue from the 1) date of the transaction, 2) date the transaction is processed or 3) first day of the billing period. Interest accrues daily on every unpaid amount until it is paid in full. Any interest that has accrued during a billing period will post to your Account at the end of the billing period and will appear on your next Statement. This means you may owe Interest Charges even if you pay the entire "New Balance" one month, but did not do so the previous month. For example, even if a customer pays their balance in full on a February 26th due date, interest would continue to accrue on the balance from February 2nd (the start of the Billing Cycle) through February 26th, and will appear on their next Statement. Once you start accruing Interest Charges, you generally must pay your New Balance in full for two consecutive Billing Cycles before Interest Charges stop being posted to your Statement.  Interest Charges are added to the proper segment of your account. However, we reserve the right to not assess Interest Charges.

**How Do You Calculate The Interest Charge?**  We use a method called Average Daily Balance (including new transactions). Under this method, we first calculate your daily balance; for each segment, 1) take the beginning balance and add in new transactions and the periodic interest charge on the previous day's balance, then 2) subtract any payments and credits for that segment as of that day. The result is the daily balance for each segment. However, if you paid your previous month's balance in full (or if your balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances. Also, transactions subject to a grace period are not added to the daily balances.

Next, to find your Average Daily Balance: 1) add the daily balances together for each segment, and 2) divide the sum by the number of days in the billing cycle.

At the end of each billing cycle, we determine your Interest Charge as follows: 1) multiply your Average Daily Balance by the daily periodic rate (APR divided by 365) for that segment, and 2) multiply the result by the number of days in the billing  period. NOTE: Due to rounding or a minimum interest charge, this calculation  may vary from the interest charge actually assessed.

**Are Unauthorized Use Or $0 Fraud Liability Claims Subject To Investigation And Verification?** Yes.

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. **What this means for you:** When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

### *MILITARY LENDING ACT NOTICE*

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

To hear this same disclosure and a general description of your payment obligations for this credit card account, please call us toll-free at: 844-788-8999.

During any period in which the Military Lending Act ("the Act") applies to you, no provision of your Cardholder Agreement that is inconsistent with the Act shall apply and your Cardholder Agreement shall be interpreted to comply with the Act.

### *REGIONAL DISCLOSURE INFORMATION*

**Ohio Residents:** Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

**New York and Vermont Residents:** Capital One may obtain your credit reports, for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request, you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Department of Financial Services by telephone or visit its website for free information on comparative credit card rates, fees and grace periods. New York State Department of Financial Services: 1-877-226-5697 or http://www.dfs.ny.gov.

**Wisconsin Residents:** No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless, prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision. If the credit card for which you are applying is granted, you will notify the Bank if you have a spouse who needs to receive notification that credit has been extended to you.

**Puerto Rico Residents:** Puerto Rico Residents may request a copy of these disclosures in Spanish.

**Residentes de Puerto Rico:** Pueden solicitar una copia de este documento en Español.

### *YOUR BILLING RIGHTS: KEEP THIS DOCUMENT FOR FUTURE USE*

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

**What To Do If You Find A Mistake On Your Statement:** If you think there is an error on your statement, write to us at:

   Capital One, P. O. Box 30279, Salt Lake City, UT 84130-0279

In your letter, give us the following information:
  • Account information: Your name and account number.
  • Dollar amount: The dollar amount of the suspected error.
  • Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
  • Within 60 days after the error appeared on your statement.
  • At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors **in writing**. You may call us or notify us electronically, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

### What Will Happen After We Receive Your Letter.

**When we receive your letter, we must do two things:**
  1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
  2. Within 90 days of our receipt of your letter, we will send you a written notice explaining either that we corrected the error (to appear on your next statement) or the reasons we believe the bill is correct.

While we investigate whether or not there has been an error, the following are true:
  • We cannot try to collect the amount in question, or report you as delinquent on that amount.
  • The charge in question may remain on your statement, and we may continue to charge you interest on that amount.

- While you do not have to pay the amount in question until we send you a notice about the outcome of our investigation, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**

- <u>If we made a mistake:</u> You will not have to pay the amount in question or any interest or other fees related to that amount.
- <u>If we do not believe there was a mistake:</u> You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us at Capital One, P.O. Box 30279, Salt Lake City, UT 84130-0279 within **10 days** telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

### <u>Your Rights If You Are Dissatisfied With Your Credit Card Purchases.</u>

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, all of the following must be true:

1. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify; and
2. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us **in writing** at:

Capital One, P. O. Box 30279, Salt Lake City, UT 84130-0279

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

©2023 Capital One. Capital One is a federally registered service mark. Products and services offered by Capital One, N.A. Capital One supports information privacy protection: see our Web site at www.capitalone.com.